FILED'11 APR 01 11:03 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN EDWIN GAMBEE, M.D.,

        Plaintiff,

   vs.

LISA A. CORNELIUS, D.P.M.;
DONALD GIRARD, M.D.; LINDA B.
JOHNSON, M.D.; DOUGLAS B.
KIRKPATRICK, M.D.; GEORGE KOVAL,
M.D.; ROGER McKIMMY, M.D.;
LANCE NEACE, D.O.; KEITH WHITE,
M.D.; KENT WILLIAMSON, M.D. and
RALPH YATES, D.O.,

        Defendants.

Civil No. 10-6265-AA
OPINION AND ORDER

---

William G. Wheatley
Jaqua & Wheatley
825 E. Park Street
Eugene, OR 97401
    Attorney for Plaintiff

John R. Kroger
Attorney General
Marc Abrams
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
    Attorneys for Defendants

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff John Gambee filed suit against individual members of the Oregon Medical Board alleging violations of his constitutional due process and equal protection rights pursuant to 42 U.S.C. § 1983. He seeks relief in the form of economic and non-economic damages, punitive damages, and attorney fees under 42 U.S.C. § 1988. All defendants move to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) based on the theory of absolute immunity. In the alternative, defendants request dismissal of plaintiff's equal protection claim on the ground that no relief can be granted and summary judgment on plaintiff's due process claim on the ground that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. For the reasons given below, defendants' motion to dismiss is GRANTED based on defendants' absolute immunity under § 1983.[1]

## I. BACKGROUND

The following summary of events is based on plaintiff's complaint. The allegations are construed in plaintiff's favor for the purposes of resolving defendants' motion to dismiss. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010)

---

[1] Because I dismiss the claims against defendants based on their absolute immunity, I do not address the merits of plaintiff's claims.

2 - OPINION AND ORDER

Plaintiff is a self-described practitioner of "alternative medicine." Pl.'s Compl., ¶ 8. Plaintiff's medical career in Oregon began in 1975, when he was licensed to practice medicine by the Oregon Medical Board (Board). He practiced medicine in Oregon from 1979 until 1994, when his license was revoked by the Board for "repeatedly demonstrat[ing] a willingness to move into uncharted waters in his practice without regard to the scientific merits of the proposed modality." Pl.'s Compl., ¶ 10.[2]

In 1996, the Oregon legislature enacted Or. Rev. Stat. § 677.190, which provided that "the use of an alternative medical treatment shall not by itself constitute unprofessional conduct [proscribable by the Board]." Or. Rev. Stat. § 677.190(1)(b). After enactment of § 677.190, plaintiff applied for reinstatement of his license with the Board. Plaintiff regained his right to practice medicine in Oregon in April 1997, subject to a Stipulated Order.[3]

---

[2] Plaintiff alleges that his disagreements with the Board stem from his non-traditional methods of treating thyroid conditions. See Pl.'s Compl., ¶¶ 8, 15, 18.

[3] Based on events surrounding the revocation and re-application process, plaintiff sued the Board in this court alleging civil rights violations under 42 U.S.C. § 1983, among other claims. See Gambee v. Williams, 971 F. Supp. 474 (D. Or. 1997) (Gambee I). In Gambee I, the court granted summary judgement on plaintiff's § 1983 claims based on the absolute immunity of the Board members "for acts performed in relation to license revocation proceedings" and based on "qualified immunity for acts outside those proceedings." Id. at 479-80. According to plaintiff's complaint, the case eventually settled.

3 - OPINION AND ORDER

On January 15, 2004, the Board issued an order modifying the 1997 Stipulated Order. The Modified Stipulated Order required plaintiff to perform certain blood tests when diagnosing and treating patients potentially suffering from hypothyroidism.

In January 2010, the Board began investigating whether plaintiff had violated the 2004 Modified Stipulated Order. During the investigation, the Board requested that plaintiff sign an Interim Stipulated Order (ISO) further restricting his practices pending the final outcome of the investigation. The plaintiff signed the order in March 2010.

On May 11, 2010, the Board served plaintiff with a Complaint and Notice of Proposed Disciplinary Action based on allegations that he violated the 2004 Modified Stipulated Order. Plaintiff requested a hearing pursuant to Oregon's Administrative Procedures Act.[4]

On September 2, 2010, the Board notified plaintiff that his license was suspended, effective immediately. On September 8, 2010, the Board issued an Order of Emergency Suspension (OES).

Plaintiff alleges that the defendants violated his constitutional due process rights by virtue of the following acts:

> a. By placing restrictions on and impeding Plaintiff's ability to practice "alternative medicine" authorized by ORS 677.190, through the ISO and the OES.

---

[4]The parties have not provided information to the court as to the resolution of this contested case hearing.

4 - OPINION AND ORDER

b. By failing to provide Plaintiff with a proper hearing before the September 2, 2010 license suspension based on the pretext that there was "imminent danger to the public's health or safety."

c. By suspending Plaintiff's license on September 2, 2010 without first issuing or serving any emergency suspension order prior to the suspension as required by OAR 137-003-0560.

d. By failing to include in the OES any: [(a)] findings of the specific acts or omissions of the licensee that violate applicable laws and rules and are the grounds for the suspension; (b) reasons any specified acts or omissions seriously endanger the public's health or safety; and/or (c) reference to the sections of the statutes or rules involved.

e. By using the "emergency" suspension to impair Plaintiff's ability to prepare for the hearing in the Pending Contested hearing.

Pl.'s Compl., ¶ 23. Plaintiff's allegations under his equal protection claim are similar to those under his due process claim. See Pl.'s Compl., ¶ 38.

## II. STANDARD

Under Fed. R. Civ. P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

5 - OPINION AND ORDER

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint." Daniels-Hall, 629 F.3d at 998.

### III. DISCUSSION

Defendants argue that they are entitled to absolute immunity for the acts they performed pursuant to their roles as Board members. In support of their motion to dismiss and partial motion for summary judgment, defendants submitted an affidavit and seven attached exhibits. Given that I grant defendants' motion to dismiss on the issue of absolute immunity, I do not consider reference to these documents necessary.

While 42 U.S.C. § 1983 does not explicitly provide immunity for government actors, the Supreme Court has consistently accorded absolute immunity "to judges and prosecutors functioning in their official capacity" in order to ensure that judicial officers are "free to act upon [their] own convictions, without apprehension of personal consequences...." Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004) (internal citations omitted). Absolute immunity may also be extended to state officials who are

not traditionally regarded as judges or prosecutors if the functions they perform are similar to those performed by judges or prosecutors. Butz v. Economou, 438 U.S. 478, 513-17 (1978); Mishler v. Clift, 191 F.3d 998, 1002 (9th Cir. 1999); Olsen, 363 F.3d at 923.

Whether the court should extend absolute immunity depends on six factors characteristic of the judicial process that were outlined by the Supreme Court in Butz. 438 U.S. at 512; see Olsen, 363 F.3d at 923. These factors are:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) the [agency's] insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Olsen, 363 F.3d at 923 (internal citations omitted).

Once the court determines that the official's function meets the Butz standard for absolute immunity, the court analyzes whether the actions at issue in the case "are judicial or closely associated with the judicial process." Mishler, 191 F.3d at 1007. Only acts closely associated with the judicial process, not administrative acts, are entitled to absolute immunity. Id. at 1008-09 (acts occurring during the disciplinary hearing process were entitled to immunity, but the administrative act of corresponding with another state medical board was not); Olsen, 363 F.3d at 928 ("procedural steps involved in the eventual decision

7 - OPINION AND ORDER

denying [plaintiff] her license reinstatement" were entitled to immunity, but issuance of a billing statement was not).

A. Functional Test/Butz Factors

Courts in the Ninth Circuit and this district have concluded that members of state medical boards are entitled to absolute immunity for quasi-judicial or quasi-prosecutorial acts based on the Butz factors. Olsen, 363 F.3d at 925-26; Mishler, 191 F.3d at 1007; Gambee v. Williams, 971 F. Supp. 474, 477 (D. Or. 1997) (Gambee I). These cases are in accord with other courts' analyses of state medical boards. See Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698 (1st Cir. 1995); Watts v. Burkhart, 978 F.2d 269 (6th Cir. 1992) (en banc) (Tennessee); Bettencourt v. Bd. of Registration in Med., 904 F.2d 772 (1st Cir. 1990) (Massachusetts); Horowitz v. State Bd. of Med. Examiners, 822 F.2d 1508 (10th Cir. 1987) (Colorado).[5]

Likewise, consideration of the Butz factors here compels the conclusion that the defendants' actions meet the standard for absolute immunity.

1. Ensuring Performance of Functions Without Harassment

The Board is a state agency that is charged with protecting the health and welfare of residents by regulating, licensing, and

---

[5] Notably, the Oregon legislature has afforded Board members with the same immunity from suit as prosecutors and judges, based on their official actions. Or. Rev. Stat. § 677.335(1).

8 - OPINION AND ORDER

disciplining medical practitioners, including conducting investigations and hearings with respect to licensing. Or. Rev. Stat. §§ 677.205, 677.208, 677.265. The Board's powers to discipline and potentially suspend a physician's license "are acts that are likely to stimulate numerous damages actions" by disgruntled physicians. Mishler, 191 F.3d at 1005. Immunity therefore ensures that the Board can conduct these important activities without fear of harassment, in order to effectively address the strong public interest in quality health care. See Olsen, 363 F.3d at 924.[6]

2. Safeguards Reducing Need for Private Damages Actions

The Board performs its duties under a comprehensive statutory scheme in addition to the provisions of Oregon's Administrative Procedures Act (APA). See Or. Rev. Stat. §§ 183.310-183.750, §§ 677.087-677.990. For example, the statutes regulating the practice of medicine in Oregon give the Board authority to suspend, revoke, or place limitations on licenses. Id. § 677.205(2). Before revoking or suspending a license, the agency must conduct a contested case hearing pursuant to the APA. Id. § 677.208(1). Hearings take place in front of an administrative law judge from the Office of Administrative Hearings. Id. §§ 183.615(1),

---

[6]Plaintiff's argument that it is he who has been harassed by members of the Board is inapposite. Whether plaintiff was harassed or not does not affect the court's comparison of the functions of judges and prosecutors with those of agencies.

9 - OPINION AND ORDER

183.625(2). Physicians have the opportunity to retain counsel and respond and present evidence in the hearing. Id. § 183.417(1). Although the administrative law judge is not bound by formal rules of evidence, rules of privilege, relevance, documentary evidence, and cross-examination generally apply. Or. Rev. Stat. § 183.450. Administrative law judges must ensure that the record is developed fully and fairly. Id. § 183.417(8).

Administrative law judges present a proposed order to the party and the agency, which the agency can modify, but only with a written explanation for its reasons. Id. § 183.650(2). Final orders must be based on consideration of the whole record and be supported by substantial evidence. Id. § 183.450(5). The order must contain written findings of fact and conclusions of law. Id. § 183.470(2). Importantly, any person aggrieved by an order may seek judicial review. Or. Rev. Stat. § 183.480(1).

Emergency suspensions in cases of immediate danger to the public do not require a pre-suspension contested case hearing as long as the Board simultaneously initiates the contested case hearing procedures. Id. § 677.205(3). This procedure complies with the APA provision that generally allows emergency suspension of licenses in cases of "serious danger to the public health or safety" and grants licensees a right to demand contested case hearings in response. Id. § 183.430(2); see also Or. Admin. R. 137-003-0560.

10- OPINION AND ORDER

Thus, the panoply of procedural safeguards on Board action provided by Oregon statutes reduces the need for private damages actions. See Mishler, 191 F.3d at 1005-06; Olsen, 363 F.3d at 924-25.

Plaintiff argues that the critical issue with defendants' actions is their failure to properly follow these procedural safeguards. However, "[i]t is the available procedures, not the manner in which they are exercised in a particular case, that is the critical inquiry...." Mishler, 191 F.3d at 1006.

### 3. Insulation from Political Influence

Through the above procedural safeguards, members of the Board are sufficiently insulated from outside political pressures. Moreover, as in both Mishler and Olsen, the Board includes public members who are not health professionals or related to health professionals. Or. Rev. Stat. § 677.235. The two public members lessen the risk that the Board will make decisions based on financial self-interest. Olsen, 363 F.3d at 925 (citing Mishler, 191 F.3d at 1007).

### 4. Precedent, Adversary Nature, and Correctability

Although the court is unaware of the extent that Board precedent controls subsequent agency adjudications, the Oregon Court of Appeals applies precedent upon judicial review sought by a licensee aggrieved by a Board order. Or. Rev. Stat. § 183.482. Further, contested case hearings that are required when the Board

11- OPINION AND ORDER

disciplines licensees are sufficiently adversarial in nature. A party in a contested case hearing has the right to representation by counsel, the right to present evidence and arguments on the issues, and the right to cross-examine witnesses and present rebuttal evidence. Id. §§ 183.417(1), 183.450(3). Finally, the Court of Appeals, through judicial review, has authority to correct any errors. Id. §§ 183.480, 183.482.

In sum, after evaluating Oregon's administrative scheme in light of these factors, I conclude that the Board functions in a sufficiently judicial and prosecutorial capacity to entitle them to absolute immunity.

B. Scope of Immunity

The court must next analyze whether the specific actions by the Board in this case are "judicial or closely associated with the judicial process." Olsen, 363 F.3d at 926 (citing Mishler, 191 F.3d at 1007). As in Olsen, each of plaintiff's allegations against defendants – their use of stipulated orders, the timing and contents of the emergency suspension, and generally, their power to effect revocations or suspensions – are "directly related to [the Board's] adjudicatory function and the ultimate resolution of the disciplinary dispute at issue." Id. at 928. Plaintiff's reasons for suing defendants arise out of their contributions to the Board's disciplinary efforts.

Plaintiff's reliance on Chalkboard, Inc. v. Brandt, 902 F.2d

12- OPINION AND ORDER

1375 (9th Cir. 1990), for the proposition that defendants' actions are not within the scope of immunity because they violated state law, is misplaced. In <u>Chalkboard</u>, the court determined that an Arizona agency did not have statutory authority to carry out an emergency closure of a day care center; that power was held by another agency. <u>Id.</u> at 1378-79. The lack of agency authority in <u>Chalkboard</u> is not present in this case. Plaintiff does not dispute that the Board is authorized to investigate and discipline physicians or that it can effect emergency license suspensions. Thus, plaintiff's allegations are unlike those in <u>Chalkboard</u>; he simply alleges that the Board failed to properly adhere to its procedures in exercising its authority under Oregon law. As defendants note, plaintiff's various arguments that defendants skipped important steps in the process or omitted information from documents are not relevant to the absolute immunity inquiry. The acts of the Board in their exercise of statutory authority "are no less judicial or prosecutorial because they may have been committed in error." <u>Mishler</u>, 191 F.3d at 1006 (citing <u>Stump v. Sparkman</u>, 435 U.S. 349, 359 (1978)).

    Therefore, because defendants are entitled to absolute immunity for their roles in disciplining plaintiff, defendants' motion to dismiss is granted.[7]

---

    [7]The court notes that plaintiff's decision to file suit in federal court shows why absolute immunity shields defendants from

13- OPINION AND ORDER

## IV. CONCLUSION

Plaintiff's due process and equal protection claims under 42 U.S.C. §.1983 fail as a matter of law. Therefore, defendants' motion to dismiss on the grounds of absolute immunity (doc. #5) is GRANTED. Plaintiff's motion to extend time for plaintiff's response to defendants' motion for partial summary judgment (doc. #14) is DENIED as moot.

IT IS SO ORDERED.

Dated this 31st day of March 2011.

_____
Ann Aiken
United States District Chief Judge

---

suit. Plaintiff engaged in the "very strategy that absolute immunity is intended to counteract [by deciding that] "[t]he decision maker rather than the decision [should] become the target." Olsen, 363 F.3d at 929 (quoting Buckles v. King County, 191 F.3d 1127, 1136 (9th Cir. 1999)).

14- OPINION AND ORDER